IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| CLARA DAVIES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 11-3006-CV-S-NKL-SSA |
| ) | |
| MICHAEL ASTRUE, ) | |
| Commissioner of Social Security ) | |
| ) | |
| Defendant. ) | |
| ) | |

**ORDER**

Before the Court is Plaintiff Clara Davies' Social Security Complaint [Doc. # 3]. For the following reasons, the Court reverses and remands the decision of the Administrative Law Judge ("ALJ").

**I.     Background**[1]

This case involves a claim for Disability Insurance benefits under Title II of the Social Security Act., 42 U.S.C., §§ 410 et seq.; 42 U.S.C. §§ 1382, et seq. Plaintiff Davies contests the Defendant's finding that she is not disabled.

  **A.     Medical Evidence**

On April 28, 2008, Davies presented to Dr. Gregory Rakestraw at the Oregon County Community Health Center, and was diagnosed with depression and anxiety disorders, as well as uncontrolled type II diabetes. On June 19, 2008, Davies was diagnosed with a hernia. In September of that year, she was diagnosed with a chronic pain disorder, muscle spasm,

---

[1] The facts and arguments presented in the parties' briefs are duplicated here only to the extent necessary. Portions of the parties' briefs are adopted without quotation designated.

depression and anxiety, and underwent surgical repair of a stuck umbilical and umbilical wall hernia. In October of 2008, she was diagnosed with lumbar radiculopathy and diabetes with poor control.

On November 3, 2008, an x-ray of Davies' lumbar spine revealed bilateral pars interarticularis defects and she was again diagnosed with insomnia, low back pain, type II diabetes and anxiety and depressive disorders. On November 20, 2008, Davies was referred to pain management treatment at Pain Treatment Associates and was examined by Dr. Thomson, who noted that Davies' ability to perform activities of daily living and work was very limited due to pain. Dr. Thomson diagnosed low back pain, sacroiliitis, spondylolysis, and sleep dysfunction.

On March 27, 2009, Davies underwent a psychological evaluation by Dr. Fontaine at OMC Behavioral Healthcare. Dr. Fontaine performed a mental status evaluation and diagnosed Davies with a severe, recurrent major depressive disorder with anxious features and assessed Davies with a Global Assessment of Functioning (GAF) score of 45-50.

On May 4, 2009, Davies was examined by Dr. Nawab at OMC Behavioral and was noted with ongoing anxiety, fears, depression, fatigue, dysphoria and pain. Dr. Nawab diagnosed insomnia related anxiety, a generalized anxiety disorder, a social anxiety disorder and a history of a major depressive disorder.

On July 22, 2009, Davies began receiving psychotherapy from Jan Johnson, L.C.S.W., at OMC Behavioral Healthcare. Davies was diagnosed with a post-traumatic stress disorder and assessed with a GAF of 48-50.

On September 3, 2009, Dr. Ericka Goodwin at OMC Behavioral Healthcare assessed Davies with a GAF of 50-52 after Davies reported ongoing depression, anxiety, and feeling foggy during the day, as well as difficulties with insomnia and concentration. Davis continued to receive psychotherapy from Johnson at OMC Behavioral on a monthly basis through the remainder of 2009 and continued to be assessed GAF scores of 48-50.

On October 29, 2009, Dr. Richard Lucas examined Davies at OMC Behavioral Healthcare and diagnosed Davies with a major depressive and anxiety disorder with a GAF of 50 after he found Davies to be depressed, despondent, anxious and dysphoric. In two follow-up visits in November of 2009, Dr. Lucas noted that Davies was making very little progress and medications were not helping her and Dr. Lucas assessed a GAF of 44-47. Dr. Lucas also completed a medical source statement in regards to Davies' ability to perform mental work-related functions in November of 2009. Dr. Lucas opined that Davies' mental impairments resulted in marked limitations in seven areas of functioning including the ability to maintain attention and concentration for extended periods and the ability to complete a normal workday and workweek. Furthermore, Dr. Lucas opined that Davies was moderately limited in 13 areas of functioning. On December 30, 2009, Dr. Lucas noted that Davies' medications were causing her to experience some side-effects and she continued to present with depression. Davis also continued to receive psychotherapy from Jan Johnson, L.C.S.W., through May of 2010, being seen on no less than five occasions with little improvement of Davies' mental health noted.

**B.      Administrative Hearing**

Davies appeared and testified before Administrative Law Judge Tobin at a hearing on July 15, 2010. Davies testified that she was unable to work due to a worsening back impairment

which caused her difficulties lifting, standing and walking. [Tr. at 29]. She also testified that Drs. Thompson and Kelly had given her a cane to aid in ambulation and that she had continued trouble with her right leg. Davies also testified that her diabetes insulin injections caused her to experience headaches and become sleepy. [Tr. 30]. Davies also testified that she was taking medications for depression and motivation which had recently been increased. [Tr. 33].

George Horne, a vocational expert, also testified at the hearing. The ALJ asked if any occupation existed in significant numbers for a hypothetical person with Davies' age, education, and work experience who was capable of work at the sedentary exertional level, with mild to less-than-moderate impairments in concentration, a right lower extremity only available for occasional foot controls, and the need for a sit/stand option every half hour. The VE stated that the work available at this level included, but was not limited to, a final assembler and a table worker. [Tr. 38-39]. The ALJ then changed the hypothetical so that the mild limitations were increased to moderate. The VE responded that with the increased exertional limitations, the individual might be able to obtain, but not sustain, competitive employment. [Tr. 39]. Upon another hypothetical by Davies' attorney, which included moderate non-exertional limitations concerning factors such as memory, and marked limitations in such areas as maintaining attention, concentration and pace, the VE responded that the hypothetical claimant would be precluded altogether from competitive employment in the national economy. [Tr. 41].

### C. The ALJ's Decision

The ALJ issued an unfavorable decision on July 29, 2010. [Tr. 5-17]. The ALJ found Davies to suffer from severe impairments of type II diabetes mellitus, degenerative disc disease of the lumbar spine and depression [Tr. 10]. The ALJ determined Davies to have a residual

4

functional capacity (RFC) to perform a full range of sedentary work with changing of positions every half hour. [Tr. 12]. The ALJ also determined Davies to have mild difficulties and restrictions in activities of daily living, maintaining social functioning, and maintaining concentration, persistence and pace. [Tr. 12]. The ALJ then relied upon the medical-vocational guideline rule 201.18 to determine that Davies was capable of performing other work at step five of the sequential evaluation process based on an RFC for the full-range of light work. [Tr. 14].

## II. Discussion

### A. Standard of Review

To establish disability, Plaintiff must prove that she is unable to engage in substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of 12 months or more. *See* 42 U.S.C. § 423(d). In reviewing the Commissioner's denial of benefits, the Court considers whether the ALJ's decision is supported by substantial evidence on the record as a whole. *See Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). "Substantial evidence is evidence that a reasonable mind would find adequate to support the ALJ's conclusion." *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007) (citation omitted). The Court will uphold the denial of benefits so long as the ALJ's decision falls within the available "zone of choice." *See Casey v. Astrue*, 503 F.3d 687, 691 (8th Cir. 2007). "An ALJ's decision is not outside the 'zone of choice' simply because [the Court] might have reached a different conclusion had [it] been the initial finder of fact." *Id.* (quoting *Nicola*, 480 F.3d at 886).

### B. Whether the ALJ Properly Weighed the Medical Opinions

Davies argues that the ALJ erred in failing to consider the opinion of treating physician Dr. Richard Lucas. A treating physician's opinion is generally entitled to substantial weight if consistent with the other clinical and diagnostic data. *Kelly v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998). An ALJ cannot substitute his own opinion for that of treating physicians. *Ness v. Sullivan*, 904 F.2d 432, 435 (8th Cir. 1990).

The ALJ's decision does briefly reference Davies' visit to Dr. Lucas, including Dr. Lucas' diagnosis of Davies' major depression and findings of moderate to marked limitations in most functions. Immediately after discussing the diagnosis and limitations found by Dr. Lucas, the ALJ details rather extensively the traumas which Davies has suffered in her life, including major physical injuries and personal tragedy and concludes that "the claimant's treating doctors gave her a diagnosis of major depression on little more than her subjective complaints." [Tr. at 12]. The ALJ then states that depressed feelings are common for people who have suffered adverse events, opines that "depression is a descriptive term which describes a mood as well as a mental illness," and then concludes that the treating doctors did not provide "a clear explanation of how the claimant's alleged mood problems were due to mental pathology rather than a normal emotional reaction to the difficulties in her life. " *Id.* The ALJ then gives "significant weight to the conclusions of the medical consultants because their conclusions are consistent with the objective findings and evidence of record." *Id.*

The ALJ's dismissal of the reports by the treating physicians, including Dr. Lucas, represented an unwarranted encroachment into the role normally occupied by an evaluating physician. The determination of the causes and typology involved in a diagnosis of clinical depression is not one which the ALJ is qualified to make without reference to the objective

6

medical evidence and reports. However, the ALJ has pointed to no place in the medical record which would provide substantial evidence to support his assumptions concerning the nature of depression or the impact of life events on mental illness. The ALJ has also not stated in his decision any explanation of how Davies' symptoms as presented in the medical record might indicate a "normal emotional reaction" rather than a "disabling mental illness." Thus, mere speculation by the ALJ as to whether events dating back over three decades contributed to a depressed "mood" or to an actual "mental pathology" cannot serve as a basis for dismissing the findings of a treating physician, who has provided not only a clinical diagnosis, but also examining reports, patient histories, and pharmaceutical management reports.

Regardless of the propriety of the ALJ's analysis, an examination of Dr. Lucas' records does not support the ALJ's conclusions. Dr. Lucas' reports do not appear to include any description of Davies' personal tragedies or traumatic childhood. Dr. Lucas' records also do not indicate that Davies' symptoms were simply evidence of a depressed "mood" rather than an identifiable mental illness. Not only did he give a clinical diagnosis of major depression and an anxiety disorder, he made objective clinical findings, assigned her three GAF scores of 50 or lower, and discussed in relative detail the impact of her medications on her illness. For example, he concluded that Cymbalta may have been most helpful when she took it at 60 mg. [Tr. 481]. He also increased dosages for other medications, such as the antidepressant nortriptyline, ostensibly in response to his findings about her continuing depression. [Tr. 485]. These specific pharmacological management records, combined with his performance of medical histories, examinations, and consistent diagnoses, indicate a doctor basing his decisions upon an identifiable clinical finding, not simply treating a patient with a depressed mood.

7

The Commissioner in his brief argues that Dr. Lucas cannot be considered as a treating physician as he only treated Davies three times. However, the Commissioner misconstrues the ruling in the case cited in his brief. In that case, *Randolph v. Barnhart*, the court bases its ruling on a number of factors, most critically, the fact that the only evidence provided by the doctor was a "cursory checklist" and also, that evidence from all other examining sources supported the ALJ's conclusion. 386 F.3d 835, 841 (8th Cir. 2004). Here, Dr. Lucas provided considerably more than a checklist, including pharmaceutical management and treatment reports. Other reports by treating physicians also support Dr. Lucas' conclusions. For example, Dr. Fontaine and Dr. Goodwin's findings independently support Dr. Lucas' diagnoses of depression and anxiety. In addition, there is considerable other evidence supporting Dr. Lucas' findings of depression, including the psychotherapy reports by a clinical social worker, Jan Johnson. Thus, the Court finds that Dr. Lucas does in fact constitute a treating physician under the law.

Further, the case should be remanded because the ALJ improperly deferred to the state agency report instead of evaluating the treating physician reports with the proper deference. The opinion of a consultative, non-examining physician normally does not constitute substantial evidence for a decision to grant or deny disability benefits. *Jenkins v. Apfel*, 196 F.3d 922 (8th Cir. 1999). An ALJ can generally credit other medical reports over that of a treating physician only if the other assessments are supported by "better or more thorough medical evidence." *Casey*, 503 F.3d at 691-92. Further, the ALJ must not ignore recent evidence consistent with claimant's subjective complaints. *See Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995) ("ALJ improperly relied on the…1990 medical progress notes to discredit Frankl's complaints of

fatigue to the exclusion of subsequent medical, nonmedical, and testimonial evidence that was consistent with Frankl's complaints of fatigue at the time of the hearing, over a year later.").

In Davies' case, the non-examining state agency medical report was made on June 17, 2009, while the hearing took place on July 15, 2010. In between those two events, Davies was seen not only by Dr. Lucas but also by Dr. Goodwin for psychiatric reasons, receiving GAF scores of 50 or under from both, as well as diagnoses of anxiety and depressive disorders. Davies also saw a social worker for psychotherapy who noted Davies' depressive symptoms. Dr. Goodwin's report, and its consistency with that of Dr. Lucas, is not mentioned at all by the ALJ in his decision. Moreover, even though the state agency report did indeed cite the reports of two physicians, Dr. Fontaine and Dr. Nawab, it seemingly discounted their medical diagnoses of depression and anxiety by pointing to nonmedical evidence that suggests Davies can perform certain daily activities. [Tr. at 356-57]. Because it did not address the opinions of several treating physicians, and heavily weighed subjective non-medical evidence as against the consistent and repeated medical opinions of different treating physicians, this non-examining opinion does not constitute the "better or more thorough medical evidence" required to supplant the opinions of treating physicians.

For the above reasons, the ALJ has improperly evaluated the medical opinions in this case. Upon remand, therefore, the ALJ must reevaluate the reports of the treating physicians discussed above to consider them in the light of the entire record of objective medical evidence, as consistent with this opinion. This re-evaluation must also include some proper explanation by the ALJ of why he chooses to accept or reject Dr. Lucas' medical source report which details certain marked and moderate mental health limitations.

9

### C. Whether the ALJ Properly Derived the RFC

Davies also argues that the ALJ erred when determining the RFC by failing to include all the evidence of record and sufficient limitations for all of Davies' impairments. An ALJ must evaluate the combination of a claimant's physical and mental impairments when determining whether a claimant can undertake substantial employment. *Cunningham v. Apfel*, 222 F.3d 496, 501 (8th Cir. 2000). Specifically, the ALJ should obtain medical evidence that addresses the "claimant's ability to function in the workplace" when developing the RFC. *Lauer v. Apfel*, 245 F.3d 700 (8th Cir. 2001). If the RFC conflicts with a medical opinion, the ALJ must explain why the opinion was not adopted. SSR 96-8P, 1996 WL 374184 (S.S.A.).

Dr. Lucas' report stated that Davies' mental impairments caused her marked and moderate limitations regarding work-related functions, including marked limitations in attention and concentration and the ability to complete a normal workday and workweek. However, there is no mention of Dr. Lucas' assessment of the limitations when the ALJ is discussing the RFC. Given that the ALJ improperly dismissed the evidence presented by treating sources, including the evidence of Davies' limitations as opined by Dr. Lucas, the ALJ must redetermine the RFC based on the entire record of evidence as is consistent with this opinion. Upon remand, the ALJ will also have the opportunity to correct any possible inconsistencies between his finding in Step II that Davies had a severe impairment of depression and his finding in Step V that Davies only had mild and moderate mental impairments.

### D. Whether the ALJ Properly Evaluated Davies' Credibility

An ALJ must give full consideration to all the evidence related to a claimant's subjective complaints concerning their disability, including the objective medical record, the claimant's

daily activities, and the dosage, effectiveness and side effects of medications, any functional restrictions, and duration, frequency and intensity of the pain. *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984). Given the improper treatment of the medical record discussed above, including the evidence about medications and functional restrictions found in Dr. Lucas' report, the ALJ must redo its credibility determination of Davies' subjective complaints using the Polaski criteria laid out by the Eighth Circuit.

### E. Whether the ALJ Erred at Step Five in Finding Plaintiff Capable of Performing Other Work

The Eighth Circuit has ruled that vocational testimony elicited by hypothetical questions that "fail to relate with precision the physical and mental impairments of the claimant cannot constitute substantial evidence." *Bradley v. Bowen*, 800 F.2d 760, 763 (8th Cir. 1986). Thus, for the reasons discussed above, any hypothetical presented to the VE based on the current RFC is legal error and must be reversed. The Court thus directs the ALJ to reevaluate Davies' impairments based on the entire record above and then redo Step V according to the proper procedures.

## III. Conclusion

It is hereby ORDERED that the matter be REMANDED to the ALJ for reconsideration consistent with this order.

                                                  s/ Nanette K. Laughrey
                                                  NANETTE K. LAUGHREY
                                                  United States District Judge

Dated: September 15, 2011
Kansas City, Missouri